## WHITE *v.* STATE

[No. 407, September Term, 1965.]

---

*Decided October 19, 1966.*

*Motion for rehearing filed October 24, 1966, denied November 8, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Rolf A. Quisgard, Jr.,* for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Allen S. Handen, State's Attorney for Calvert County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant, Charles F. White, was arrested on a warrant issued by a committing magistrate of Calvert County charging him with assault upon Thawley Parks of that county. At the

hearing before the trial magistrate, the State prayed a jury trial. At his trial in the Circuit Court for Calvert County on July 16, 1965, Judge Perry G. Bowen presiding, the appellant elected a court trial and pleaded not guilty. He was not indicted, but was tried on the warrant issued by the committing magistrate. He was found guilty of assault and sentenced to a term of eighteen months in the Maryland House of Correction, from which judgment and sentence he has appealed.

On December 12, 1964, outside a tavern in Calvert County, at approximately 11:30 p.m., the appellant spat in the face of Mr. Thawley Parks while the latter was sitting in his car. Parks left the scene of the assault in his car, and the appellant pursued him in another car forcing him to stop three times. After returning home, Mr. Parks went to Prince Frederick and swore out a warrant for the appellant's arrest.

The appellant, White, makes the single contention that under *Schowgurow v. State*, 240 Md. 121 (which held that an indictment or trial by a jury whose members had been required by the Constitution of Maryland to declare a belief in God as a prerequisite to service, was invalid under the federal Constitution), the fact that the complaining witness, in order to procure the arrest warrant, and the committing magistrate and the State's attorney, in order to qualify for office, all had to declare a belief in God, invalidates his being brought before the criminal court and his subsequent conviction.

Short answers are, first, that since the decision of the Supreme Court in *Torcaso v. Watkins*, 367 U. S. 488, 6 L. Ed. 2d 982, on June 19, 1961, the committing magistrate and the State's attorney (both of whom necessarily were elected or appointed after 1961) could not be required to profess a belief in God as a prerequisite to qualifying for an office of profit or trust, and similarly the complaining witness could cause a warrant to be issued without declaring that he believed in the existence of a Supreme Being; second, the record is silent as to whether the two officials on taking office or the witness in procuring the warrant in fact did or did not declare a belief in God; and, third, that if any or all of the three voluntarily did declare a belief in God obviously he exercised a constitutionally guaranteed right of religious freedom.

Committing magistrates are appointed by the Governor from among the justices of the peace, Code (1957), Art. 52, § 97 (a). Code (1957), Art. 52, §§ 1-3, specify that every justice of the peace must take and subscribe "the oaths and declarations" prescribed by the Constitution and that no person shall act as a justice of the peace before he has done so. Article V, § 8, of the Constitution makes it the duty of the judge of a county to administer the oath of office to the person elected as that county's State's attorney. The offices of justice of the peace and of State's attorney are offices of profit or trust. Art. IV, § 1, of the Constitution and Code (1957), Art. 52, §§ 1-3; Art. V, § 9, of the Constitution.

Article 36 of the Maryland Declaration of Rights provides that no person otherwise competent shall be deemed incompetent as a witness on account of his religious beliefs "provided he believes in the existence of God" and that "under His dispensation" the witness will be held morally accountable for his acts and be rewarded or punished therefor in this world or the next.

Article 26 of the Declaration of Rights provides that all warrants to seize any person must be on oath or affirmation. What is contemplated that an oath or affirmation is under the Constitution of Maryland is suggested by Art. 39 of the Declaration of Rights, which in part says: "* * * the manner of administering an oath or affirmation to any person ought to be such as those of the religious persuasion, profession or denomination of which he is a member generally esteem the most effectual confirmation by the attestation of the Divine Being." Article 21 provides that in all criminal prosecutions an accused shall have a right "to examine the witnesses for and against him on oath." That belief in a Divine Being was the foundation of either an oath or an affirmation is revealed not only in the Constitution but by the implementing statutes. Section 10 of Art. 1 of the Code (1957), prescribes the form of oath for witnesses as: "In the presence of Almighty God I do solemnly promise or declare * * *." The next section supplies an alternative, saying "whenever an oath is required by this Code an affirmation shall be sufficient if made by a person conscientiously scrupulous of taking an oath."

It is crystal clear that considered facially and alone the Maryland constitutional and statutory provisions we have set out or referred to support the contentions of the appellant. In *Torcaso v. Watkins,* 223 Md. 49, we held that a declaration of a belief in the existence of God was a self-executing constitutional prerequisite to qualification for an office of profit or trust—we said: "* * * it seems clear that under our Constitution disbelief in a Supreme Being, and the denial of any moral accountability for conduct, not only renders a person incompetent to hold public office, but to give testimony or serve as a juror" —and concluded that this prerequisite did not offend the federal Constitution.

Our conclusion was held erroneous by the Supreme Court, which stated that the Maryland religious test for public officers and witnesses violated the Fourteenth Amendment because a State cannot constitutionally force a person "to profess a belief or disbelief in any religion" (367 U. S. 495).

Thus, from June 19, 1961 on it has been apparent that a declaration of belief in the existence of God could not be required in Maryland of one, otherwise qualified, seeking to become finally qualified as a public official, or of a witness.

In *Schowgurow* we took judicial notice of the prevailing practice of questioning prospective jurors as to a belief in God and of excluding those who did not reply affirmatively and also of the questioning of jurors as to such belief as part of their oaths. We cannot take judicial notice that since the decision in 1961 in *Torcaso* officials have been required to express a belief in God before they can qualify. We can and do take judicial notice that for many years it has been the widespread practice to permit a witness who had scruples against taking an oath to affirm without inquiry as to whether the affiant believed in the existence of God. It has not been considered necessary, nor has it been the practice to state in the affidavit or the record the reason for an affirmation rather than an oath. *Loney v. Bailey,* 43 Md. 10, 16-17. Maryland Rule 5 c, which became effective on January 1, 1957, appears to have recognized this by defining an "affirmation" as "a solemn promise and declaration, made under the penalties of perjury, by a person who conscientiously declines to take an oath, that a certain statement of fact

is true." If the practice or the Rule was improper before *Torcaso* they have been proper and required since by *Torcaso*.

The premises of the appellant's contention are unsound and will not support the conclusions he asks us to reach.

*Judgment affirmed.*