## WALTER WILLIAM SMITH, JR. *v.* STATE OF MARYLAND

[No. 111, September Term, 1972.]

*Decided October 26, 1972.*

318

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Gerald Adler* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *J. Carroll Holzer, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

In his second trial, Walter William Smith, Jr., appellant, was convicted by a jury in the Criminal Court of Baltimore, presided over by Judge David Ross, of robbery and assault with intent to murder. Appellant was sentenced to two concurrent 12 year sentences dating from September 3, 1969.[1]

Appellant's first conviction was reversed by this Court and the case was remanded for a new trial because of a failure by the then trial judge to allow certain *voir dire* questions pertaining to racial prejudice and because of a violation of appellant's constitutional right to be present at every stage of the trial. *Smith and Nelson v. State,* 12 Md. App. 130, 277 A. 2d 622 (1971). This appeal flows from the second trial.

Appellant presents three questions for our review:

1. Was Appellant denied due process when he was permitted to plead to the charges without being affirmatively advised of his right to request a change of venue?

2. Under the circumstances of this case, was it proper to remove the assault with intent to murder indictment from the stet docket and to place it on the trial docket?

3. Was the appellant deprived of genuine and effective assistance of counsel, and, therefore, was the de-

---

1. Appellant was convicted and sentenced together with co-defendant Johnnie Nelson, not an appellant here.

nial of appellant's motion to discharge counsel an abuse of discretion by the trial court?

The testimony discloses that the appellant was involved in the armed robbery and shooting of John Shell, although the appellant was not the trigger man. Shell testified that when he left a bar on West North Avenue, in Baltimore City, he was accosted by a group of young men who demanded "a quarter" from him. He refused to give it to them; whereupon a gun was produced by one of the group. Shell ran in an attempt to elude his attackers. After running several blocks, he came upon a taxicab and asked the cab driver to radio for the police. At this point in time, Shell's pursuers caught up with him. Shell again broke loose from the group and, as he was running from them, was shot with a .38 caliber pistol in the lower lumbar region of his back. The appellant, together with Luther Watkins, also not the gun man, then kicked and beat Shell while he lay wounded in the street. Watkins removed Shell's wallet, but stated there was no money in it. Shell, on the other hand, said that he had $43.00 stolen from him.

According to Watkins,[2] an admitted accomplice, he and the appellant fled the scene, but later returned to it when a crowd gathered as the police and an ambulance arrived. Eyewitnesses to the beating of Mr. Shell pointed out to the officers present at the scene both Watkins and appellant as being Shell's assailants. Both were immediately apprehended. At the trial, the victim and two other witnesses made a positive judicial identification of the appellant as one of the assaulters.

I

Appellant argues that Art. IV, § 8 of the Maryland Constitution (Removal of Causes) is in *pari materia* to

---

2. Watkins was granted a severance at the time of the first trial. He received 10 years for his participation in the robbery, did not appeal, and was on parole at the time of the second trial of appellant. Although indicted along with appellant for assault with intent to murder, Watkins received immunity in exchange for his testimony, and a *nol pros* was entered as to him. Compare *Bowie v. State*, 14 Md. App. 567, 287 A. 2d 782 (1972).

"the right to elect between Court trial and Jury trial," Rule 741, and therefore should require "a specific showing that the accused knew he had a right to participate in the selection of his place of trial." He avers that the "increase in the incidence of reports of crimes of violence * * * in the City of Baltimore [has changed] [t]he public mind, mood, and temper" so that the appellant should have been advised of his right to request a change of venue.

Art. IV, § 8 of the Maryland Constitution provides in pertinent part:

> "The parties to any cause * * * in all cases of Presentments or indictments for offenses, which are or may be punishable by death, pending in any of the courts of law in this State having jurisdiction thereof upon suggestion in writing under oath of either of the parties to said proceedings that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record * * * to be transmitted to some other court having jurisdiction * * *, *but in all other cases of presentment or indictment,* pending in any of the Courts of law in this State having jurisdiction thereof, in addition to the suggestion in writing of either of the parties to such presentment or indictment that such party cannot have a fair and impartial trial in the court in which the same may be pending, *it shall be necessary for the party making such suggestion to make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same * * *.*" (Emphasis supplied).[3]

---

**3.** Maryland Rule 542 sets forth the procedure for removal in civil cases; Rule 738 provides for the application of Rule 542 to criminal cases, subject to §§ b and c of Rule 738. The noun "party" as used in Rule 542 and Rule 738 means the "parties to the action and not counsel."

This section of the Constitution was ratified by the voters on November 2, 1875, and has remained unchanged for almost 97 years. Appellant cites no authority for his bald allegation that a suggestion of removal and the right to jury trial are entitled to equal treatment. The record in this case is silent as to any suggestion of removal that might have been made to Judge Ross. Rule 1085 would appear to be dispositive of the matter. Even if we assume, *arguendo*, the question to be properly before us, we note that the offenses charged were not punishable by death, and thus did not give rise to a right of removal *per se*. If the suggestion of removal had been made, it would be governed by the rule of discretion enunciated by the Court of Appeals in a number of cases, including, *inter alia, McGowan v. State,* 220 Md. 117, 161 A. 2d 156 (1959) ; *Piracci v. State,* 207 Md. 499, 115 A. 2d 262 (1955) ; *Allers v. State,* 144 Md. 75, 124 A. 2d 399 (1923), and by this Court in *Stevenson & Borum v. State,* 9 Md. App. 152, 262 A. 2d 36 (1970), and *McLaughlin v. State,* 3 Md. App. 515, 240 A. 2d 298 (1968).

It has not been constitutionally mandated that an accused must be advised that he has a "right of removal" in capital cases, or that he may suggest removal in non-capital cases, and we decline to so hold. It would indeed be circuitous to require in non-capital cases that the record must affirmatively demonstrate that an accused be advised of his right to suggest, under oath, that he could not receive a fair and impartial trial in a particular jurisdiction, and then have the trial judge to whom the suggestion is made, in the sound exercise of his discretion, deny the motion.

The argument urged upon us by the appellant is without basis in law and is, at best, a novel demonstration of psychic pyrotechnics.

## II

When the appellant was initially indicted in 1969, the Grand Jury of Baltimore City specifically charged him,

in Indictment No. 6510, with robbery with a dangerous and deadly weapon, attempted robbery, robbery, assault with intent to rob, assault, larceny, and receiving stolen goods. At the same time, appellant was charged in a two count indictment, Indictment No. 6511, with assault with intent to murder, and assault.[4] The case was originally called to trial on January 19, 1970. The State then proceeded solely on Indictment No. 6510, and declined *at that time* to proceed on Indictment No. 6511. Appellant appealed his conviction under Indictment No. 6510, and we reversed and remanded for a new trial. *Smith and Nelson v. State, supra.*

On May 20, 1970, four months after the original trial, the State, pursuant to an order of court, Rule 718, placed Indictment No. 6511 on the stet docket. When, following our remand, the case was called to trial before Judge Ross, the State sought and obtained permission from the trial court, to remove Indictment No. 6511 from the stet docket, to restore it to the trial docket, and to try it simultaneously with Indictment No. 6510. Appellant opposed the restoration of Indictment No. 6511 to the trial docket, and said that he was not prepared to go to trial on that particular charge inasmuch as he had no knowledge that the State had intended to prosecute him under Indictment No. 6511. Judge Ross correctly observed that both indictments grew out of the same factual situation, and rejected appellant's contention.

Appellant's argument before the trial judge was somewhat ambiguous; the gist of it was, however, that he questioned the State's "tactics" and averred that he was "not involved in any shooting," in addition to the above stated allegation. Here, appellant urges us to promulgate a rule of law requiring the State to affirmatively show that a defendant knowingly and intelligently had agreed to a stet before the State can remove a case from

4. At appellant's second trial, a motion for judgment of acquittal was granted by Judge Ross as to larceny and receiving stolen goods. The case was submitted to the jury on the remaining counts in Indictment No. 6510, and on Indictment No. 6511.

the stet docket and cause it to be tried. We decline to do so.

The entry of a stet in a criminal case simply means that the State will not proceed against an accused *on that indictment at that time.* It is not ordinarily a final determination of the charges against the accused, so that the State may, at a later point in time, proceed under the same indictment. See *State v. Morgan,* 33 Md. 44 (1870) ; *Regle v. State,* 9 Md. App. 346, 353 n. 1; 264 A. 2d 119 (1970).

Appellant further avers that the Maryland stet procedure is violative of his right to a speedy trial and is similar in nature to the *"nolle prosequi* with leave" procedure of the State of North Carolina which was proscribed by the Supreme Court in *Klopfer v. North Carolina,* 336 U. S. 213, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967). We disagree. Klopfer, a professor of zoology at Duke University, was indicted for criminal trespass, a misdemeanor punishable by fine and imprisonment in an amount and duration to be determined by the trial court in the exercise of its discretion. The case proceeded to trial "with admirable promptness," and when the jury failed to agree on a verdict, the trial judge declared a mistrial and continued the case. Sometime later, the prosecuting attorney, styled the "solicitor," informed Professor Klopfer that he, the solicitor, intended to have a *nolle prosequi* with leave entered in the case. Klopfer sought a trial on the merits. In spite of Klopfer's opposition in open court, the solicitor was permitted to enter a *nolle prosequi* with leave. The Supreme Court of North Carolina noted that while the entry of this *nolle prosequi* with leave did not permanently discharge the indictment, its procedure was proper. The Supreme Court, speaking through Chief Justice Warren, reversed the State Court and said that the North Carolina procedure did not afford affirmative protection against an unjustified postponement of trial for an accused. The State of North Carolina, at least prior to *Klopfer,* did not provide an accused with a method to force *nolle prosequi*

indictments to trial. We think *Klopfer* to be inapposite for two reasons: (1) Klopfer actively sought trial on the *nol prossed* indictment, whereas the defendant in the instant case seemingly was content to have the indictment remain on the stet docket, and (2) the State of North Carolina did not provide an accused with a method of compelling trial on an indictment; Maryland, however, has afforded an accused that protection. *Brown v. State,* 2 Md. App. 388, 234 A. 2d 788 (1967). Moreover, the constitutional question raised here was not tried and decided in the trial court. It is not properly before us. Rule 1085; *Zimmerman v. State,* 261 Md. 11, 273 A. 2d 156 (1971); *Richardson v. State,* 14 Md. App. 487, 287 A. 2d 339 (1972); *Brooks v. State,* 13 Md. App. 151, 282 A. 2d 516 (1971).

## III

We now turn to appellant's last contention. At the time of the second trial, the appellant, in proper person, advised the trial judge that, "I have a habeas corpus that I would like to present to the Court." The paper writing, styled "habeas corpus," was never presented to the court, but one can glean from the record that the writing was in actuality a motion to dismiss court-appointed trial counsel, not the counsel on appeal. Appellant stated that he had not seen his trial counsel until the day of the trial, although he had seen counsel's associate. According to appellant, the associate asked a number of questions of him that were irrelevant. In response to a direct question put to trial counsel by the judge, counsel stated that he had read the transcript of the original trial the night before and was prepared to try the case. Judge Ross then declined to dismiss the attorney. Appellant argues, *inter alia,* that trial counsel did not participate in motions made by counsel for the co-defendant. Our examination of the transcript reveals the following motions to have been made by counsel for the co-defendant: (1) motion to sever, (2) objection to reopening of the stet, (3) a motion to suppress evidence

grounded upon an alleged illegal arrest. Additionally, the co-defendant, in proper person, asked the trial judge to disqualify himself because the co-defendant felt he could not receive a fair and impartial trial before a court presided over by Judge Ross, in light of the judge's refusal to grant the severance. Judge Ross declined to disqualify himself.

The first motion was overruled, as had been a similar motion made at the time of the first trial. The motion on behalf of the co-defendant was made to escape the possible association with appellant who at the first trial had been positively identified. The fact that counsel for the co-defendant desired a severance and appellant's counsel did not, does not render appellant's trial counsel incompetent, nor does it deny appellant "genuine and effective representation."

Contrary to appellant's argument, trial counsel did join in the objection to the reopening of the stet, as previously discussed under part II of this opinion. The third motion was applicable only to the co-defendant, and not in any way directed toward the appellant's cause. No question existed as to the validity of the arrest of appellant. The motion to disqualify made by the co-defendant, in proper person, was without basis, was properly denied, and we think trial counsel properly did not join in such a motion.

It has been held that an accused has the right to counsel, but when counsel is appointed by the court, as here, the accused has no right to dictate what counsel shall be appointed. *Conway v. State,* 15 Md. App. 198, 223, 289 A. 2d 862 (1972) ; *English v. State,* 8 Md. App. 330, 259 A. 2d 822 (1969). In the instant case, trial counsel, a lawyer of many years experience in the trials of criminal causes,[5] stated that he had gone over the record of the previous trial and was prepared to try the case. Our in-

---

5. Judge Ross observed that the trial counsel, Joseph Rosenthal, Esq., was defending criminal cases when the judge was going to law school, and that while he was a student the judge had watched counsel try cases.

326

dependent review of the transcript convinces us that trial counsel conducted a vigorous defense for his client, that the caliber of the defense was in keeping with adequate preparation,[6] and that appellant was afforded genuine and effective representation. *State v. Merchant,* 10 Md. App. 545, 271 A. 2d 752 (1970) ; *Keeling v. Director,* 5 Md. App. 123, 245 A. 2d 604 (1968) ; *Gullion v. Warden,* 3 Md. App. 263, 239 A. 2d 140 (1968).

*Judgments affirmed.*

---

6. The record reveals trial counsel's reference to specific pages of the transcript of the first trial in his effort to impeach a State's witness.